Case number 24-3444, Rita Keith v. James Griffiths. Oral argument, 15 minutes per side. Mr. Starks for the appellant. Good morning. May it please the court, I am attorney Sam Starks here on behalf of the appellant, Miss Rita Keith. The mother of Arthur Keith. And would like to first thank the court for giving us the opportunity to appear in person to address this appeal. Which for part of the time I have, I'd like to talk beyond the briefing to some extent. And just the cases that have been referred to in the briefing. But more broadly, talk about sort of how we got here in this case. And the implications of this case. I do civil rights work. And as a civil rights trial lawyer, summary judgment is critical to all of our cases. And so whenever we have a case that goes a certain way on summary judgment, or qualified immunity appeal, and we end up before an appellate court, that is obviously significant. In my experience, and I believe this case and this district court's decision sort of bears this out. This is a case where the district court did, in essence, the opposite of what the summary judgment standard requires. There are cardinal rules, as we all know, about summary judgment. Viewing the evidence in the light most favorable to the plaintiff. Along those lines, how does this sort of no physical facts rule, how does that apply here? Or how should it apply? Your Honor, one of the things I'd like to say about that rule is there is an error in the appellant's brief where we refer to that rule in connection with the Burnett case. It's actually a case that's called Harris v. General Motors. Your Honor, I believe that the physical facts rule and the case law that interprets the physical facts rule is not dispositive or controlling, and it does not give to a trial court or to a court de novo some sort of Daubert type standard to apply to a witness's testimony. And if there's any aspect of that testimony, the light was green or the light was red, that somehow there's some evidence that says it was contrary to that. The physical facts rule, as I understand it, it's for situations, it's like the train. There's a case that talks about the person who's watching the train track, listening and watching the train track, but says he never hears or sees a train. And there are other examples, products liability cases, cases where people are saying things that they were someplace where they could not have possibly been. I would submit that the extent to which these young men who were children were inconsistent about how many cars were there, was the van black, as a trial lawyer, cases are decided all the time based on witnesses getting certain things wrong, maybe being impeached on that. That's for the jury to decide. I don't believe the physical facts rule allows a trial court or a court of appeals sitting de novo to take away from the jury evidence of witnesses who may or may not have gotten certain things wrong. It clearly was not contemplated to do that, so I would submit that it... How does that weigh at the summary? I think you acknowledged that, at least as it relates to Mr. Starr, he got certain facts wrong. How does that play at the summary judgment stage? Well, let me say this, your honor. I think that as it relates to, let's take the autopsy, for example. We have a difference of view about the autopsy finding. We have the... Let's deal with Mr. Starr first. I think that's different. Deal with Mr. Starr. The fact that he got certain facts wrong, how does that play in our analysis at the summary judgment stage? I think the way that plays is that if this court were to view his testimony at his deposition in totality, view the fact that he was identified by an officer at the very outset of this case and gave an account of what happened. If the court looks at the passage of time between when the incident occurred and when he gave his deposition testimony, I would submit that there is nothing incredulous or so inconsistent with the physical facts that would allow this court, de novo, or any court to say, you're excluded as a witness. So that would be my response to that. But the extent to which this physical facts rule, I guess if you're going to apply it, it sort of goes both ways. Because obviously the moment of truth, so to speak, is whether at the time Officer Griffiths shoots Arthur Keith, is he in possession of a weapon? Which makes that weapon very important. Stiles, who's with Officer Griffiths, he never sees Arthur Keith pointing a gun or holding a gun. Is that the question, whether he's in possession of a weapon or whether he was pointing the weapon at the officer? The question is whether at the moment in time Officer Griffiths fired, was Arthur Keith holding a weapon and pointing it at an officer? We don't doubt that there was a weapon in that vehicle. Arthur Keith would have likely been arrested and may have in fact been the guy who the people were calling 911 about, which is somebody who's present in the parking lot shooting. The relevant inquiry though is that moment in time when Officer Griffiths fires, he has to have reasonable belief that either himself or others are in imminent danger of serious bodily injury or death. And so none of the individual kids say they saw a weapon. The two officers with him admit they didn't see that, which makes Arthur Keith running with no weapon, according to the eyewitnesses, relevant. Which makes whether this weapon was ultimately found on the ground and recovered because the officers feared they were going to be attacked, that makes all of that relevant. And so to me the physical facts rule, it's nothing different than what a jury is already allowed to do as it relates to assessing the credibility of witnesses. A jury could certainly decide that based on the things that Mr. Starr got wrong, his testimony should not be credited. But here, the way the defense argues this case, they argue it as if they win if there is evidence that supports Officer Griffiths' version. There is evidence that supports his version. Summary judgment requires the court to do the opposite. Give the plaintiff's case, the plaintiff's theory, look at the evidence from the light most favorable to the plaintiff. This district court opinion reads as if it's a finding of fact that comes from a trial. That's not the standard for summary judgment, your honor. The only other thing that I would like to add is that this is not a case, at least on the law, about qualified immunity and whether it applies and how it should be analyzed. It's really not even a case about deadly force in the context of Graham v. Conner. This is a case about summary judgment, whether or not in a deadly force case, and this circuit has addressed how do you deal with qualified immunity in a deadly force case when there is a question of fact about what ultimately happened. And there's case law that says if there is a question of fact about the ultimate issue, there's no qualified immunity. So the analysis and the case law that I think bears on this case and what happened here, it's the summary judgment standard, which applies the same for individuals in police cases as in any other case. Thank you, your honor. Good morning, your honors. May it please the court, I am Aretta Bernard and I represent Officer James Griffiths in this matter. Present with me today is Chief General Counsel from Cuyahoga Metropolitan Housing Authority, Mr. Terry Billups, and my colleague, Stephanie Olivera-Mitica. We have handled this matter from its inception and are proud and grateful to be here to argue this case today before the court. The record in this matter unequivocally supports the affirmance of summary judgment and we respectfully ask this court to affirm. As this court is aware, this matter emanates from a rapidly set of evolving events that occurred on November 13, 2020. Three officers reported to the scene of a parking lot where a reported black van with tinted windows was backed in and running with out-of-state plates and suspected of being involved in criminal activity, including the firing of a weapon in the parking lot near a grassy area and in a residential area protected by CMHA PD. Officer Griffiths was the first officer to arrive, followed by Sergeant Stiles and Officer Lentz. Officer Griffiths approached the van, he could not see in. He ultimately announced police, policed, he was on the passenger side of the van. Officer Stiles was on the opposite side, the driver's side of the backed-in van. The back of the van was facing a sidewalk and a fence and beyond that was a grassy area. In the record there is a nice map that gives you a visual of where these events occurred and how they occurred and it was attached to the declaration of Officer Griffiths. That is that record of ID number 4819. What do we do with the testimony of the folks other than the officers about what took place, specifically Mr. Starr and Mr. Melton, what do we do with that testimony? It is our position and the record reflects and supports your honor as concluded by the district court that Jazeer Melton absolutely admitted that he was unable to see Arthur Keith's hands. At the critical moment when Officer Griffiths made the reasonable determination to use force to protect his person, constitutional right to do that. His testimony unequivocally is I did not see, I could not see. At his deposition which is also on videotape in the record for the court to review and see which makes it three-dimensional, he actually went like I can only see from here up. I clarified it and I said you mean you could not see from the shoulders down and he said no. So he could not see his hands and so he could not testify and did not testify that Mr. Keith did not point his gun at Officer Griffiths who then in turn shot in self-defense. Mr. Dudley, am I wrong that he testifies that he did not see Mr. Keith turn, I know he did not see his hands, but he did not see him turn toward Officer Keith. The testimony I thought was he saw him getting out of the van and not long after that these shots rang out and Mr. Keith was trying to essentially get away, running away, tripping in the process. But he did not see any sort of turning toward the officer. Am I right about that? I think you are referring to, Judge Cole, I think you might be referring to Damarion Starr's testimony instead of Jazir Melton. Very unequivocally said he could not see Keith's hands, could not say that Keith did not point a gun at Officer Griffiths. And that is the critical fact. Did he address at all the issue of turning? I don't believe so. I am confident he said after the shots were fired he ran. And he ran a considerable length and that, your honors, a portion of that is captured on surveillance video that was attached to the top of 6201 Halt North. My point is he did not testify that he saw Mr. Keith turn toward Officer Griffiths. He said that he could not see. I understand he did not see his hands. I am just talking about what was his testimony in terms of Mr. Keith as he is trying to get away turning toward Officer Griffiths. My recollection is, your honor, all he said was he turned and ran. Exited the vehicle. Turned when and where? And it wasn't clear. When he got to the sidewalk, Officer Griffiths says he turned and pointed the gun at him. I understand what Officer Griffiths said. I am talking about Mr. Milton. All Mr. Milton said was after he exited the vehicle, he got up to the sidewalk and ran. And the shots were fired. He could not indicate what Mr. Keith was doing with his hands. He could not see from that distance. I understand the situation about the hands. I am asking about the turning. I don't think he actually spoke directly on that point. With regard to the other alleged witness, Mr. Starr, Damarian Starr, testified that he could not see Mr. Keith's hands at all times. When I asked him about what he said to the police, he agreed that it was possible that Mr. Keith did have a gun and he could not see it. And these are the facts in the record, and they are unrefuted and unrebutted. Is it possible, Mr. Starr, Mr. Keith had a gun in his hand and you just couldn't see it from your point of view, and the answer was no? Isn't that part of his deposition testimony? He did. But just prior to that, he said he couldn't see at all times. He could not see because he said that. It was wrong, but he said that. Mr. Keith got out of the front driver's door, and he could not see what he was doing with his hands at that time. So he answered that question, and then he actually contradicted himself in the next answer. But what I'm referring to, Your Honor, is on page 99 of his transcript where he actually admits that what he said was that he never saw Keith with a gun. And he was interviewed four months after this incident. And that's what he told the police. And when I confirmed that at his deposition, he agreed that he said that, and then he agreed with me that that didn't mean Keith didn't have a gun. He said that's true. Yes, he agreed that there was a possibility that Keith had a gun. He just didn't see it. So there's no one in this record. Didn't Mr. Starr also testify that Mr. Keith didn't point anything at Mr. Griffiths? Didn't he also testify to that effect? He said not from what he could see. Did he ever see a point? But no one, including myself, the plaintiff never asked him just before the shots were fired, did Mr. Keith, plaintiffs never asked him that question. Did Mr. Keith point a gun? They didn't give him a chance. My questions were involved with what he was doing with his hands as he was allegedly getting out of the driver's side door, which he didn't do. So nobody ever asked him that question. The plaintiff appellant has the burden in this case to establish that there's evidence of any unconstitutional act. And they cannot do that on this record, Your Honor. They did not do this on the record. There is zero evidence to contradict the repeated statements given by Officer Griffiths as to what happened here. And Mr. Starks just admitted, I want to talk a little bit about the physical facts. Judge Gaughan never cited the Harris decision in the district court opinion. What she did was state that the physical facts in this record are unrefuted by these witnesses. And that is absolutely true. I mean, we can talk about the testimony of Damarian Starr. But he insisted, I asked him a very open-ended question, Your Honor, what color was the van? And he said red. And I went back to it later because I wanted to give him the opportunity to maybe correct his recollection. And he said, I said, why is it you call it was red? And he said, because that's what I saw. And so he was wrong. Let me ask you about this. Clearly the van wasn't red. The van is black. So he testifies as red. Does that mean that courts can disregard his testimony as to whether Mr. Keith was pointing a gun or whether he ever turned back, that we can disregard that testimony? No. I think what the court did and what you should do is accept that that's what he testified to and compare that to the unrefuted physical facts and know that that is, as Mr. Stark said, the physical facts will apply when the testimony is clearly incorrect based on the facts. This positive question in this case was whether a van was black or red. I agree with you. But that's not really the question in this case. It's about the excessive force and the shooting. So I'm just trying to see how do we and I understand there are other discrepancies. I'm just talking about one. There are other discrepancies in his testimony. But what do we do to compare that to the actual genuine issues as to whether the use of excessive force? I don't think you need to. I think you can decide this case based solely on the fact that there is zero evidence to refute the statement of Officer Griffiths as to why he shot and had to make the unfortunate decision. And I think what you can look to to support that is the fact that he yelled, he has a gun, he has a gun, drop the gun, drop the gun. He was warning his fellow officers that they were in harm's way. When he didn't drop the gun and he exited the van, got to the end of the car, turned and barreled the gun at the officer, he had every right to fire in self-defense. And there is nothing in this record that can refute that that is what happened here. And that is why summary judgment is appropriate. Just like the decision in Burnett v. G., which I think is this court's decision that is applicable here. And Judge Cole was on that panel. There was an affirmance of summary judgment in favor of the officer, the sheriff in that case, who fatally shot and fired four shots into the decedent in that case. Was there in that case testimony from witnesses contradicting what the officer said in that particular case? Just like in this case. There were attempts to create contradictions, Your Honor, but they failed. And in that case, unlike this case, there was expert testimony that the court rejected in affirming summary judgment. Because this court takes the position that the officer's statement as to what occurred, especially when consistent with all of the physical and forensic evidence and the other testimony in the record, it should be affirmed on summary judgment. So we believe that case is dispositive of this issue. If I understand you, the bottom line of what you're saying is that, do you agree that the crucial moment is, did he turn and point a gun? I think that this court's case law says even if he didn't turn and point the gun at him, he still had a right to constitutionally shoot him if he perceived that he was about to be shot. But I agree with you. There is nothing, the key in this case is, there is absolutely nothing to refute that Officer Griffiths saw Keith point the gun at him and that caused him to discharge his weapon. And also I would add that in addition to yelling gun, gun, the DNA on the gun was Mr. Keith's. It was tied to him. The gun was found by Officer Stiles when he rounded the corner. So he had it on him when he left and the evidence is that he did have it there and then of course the DNA ties it to him as well. So these facts are unrefuted in the record. And I believe they support, so calling out the gun, explaining why he didn't pull the trigger when he saw the gun and Mr. Keith was attempting to exit the car, the van. He was holding it against, he said, his midsection. Holding the gun like this. It's only when he turned, exited the van, turned around and went like this that Griffiths fired and the bullet that unfortunately resulted in his death hit him right here. Just two inches beyond the midline of his torso. How much time was there between when he exited the van and when he was shot? Seconds. He took three or four steps Griffiths described. He made the ill-fated decision to turn and that's when Griffiths fired in self-defense. And that is the totality of this record. And neither Melton can refute that or rebut that because he couldn't see. And Mr. Starr could not refute that because he could not see his hands at all times and he testified unequivocally that it's entirely possible he did have a gun. And these are the facts of the case and they are undisputed. In conclusion, I'd be remiss if I didn't tell the court, as a human being and as a mother, the tragic events that occurred on November 13th do not elude me and they do not elude my client, Officer Griffiths, a 28-year, at that time, veteran of CMHAPD who had never once discharged his weapon in the line of duty. Notwithstanding that, in order for this court to accept the appellant's position that somehow an unarmed man was shot in the back while attempting to flee would require this court to completely abandon well-settled case law and ignore unrefuted facts in this record, which this court cannot do. That theory is fictitious and should be rejected. And for these reasons, we ask respectfully that this case be affirmed. Thank you very much. Mr. Starks, I wonder if you could address where your sister counsel left off and sort of this issue that there is no dispute in the record that Mr. Keith turned toward Officer Griffith and pointed a gun. If that, in fact, is what you view as a key fact.  Yes, sir, Judge. I guess that hinges in part on the testimony of Melton. Yes, Your Honor. In the brief of the appellant on pages 21 and pages 22. At the bottom of page 21, there's a summary of Jazir's testimony. Prior to the shooting, Jazir recalls seeing an officer open the door of the van and the officer was holding his gun at the time. According to Jazir, he observed Keith got out of the van and tried to turn and run and that is when he was standing behind him, referring to Officer Griffiths, and that is when he, Officer Griffiths, started shooting. During questioning from defense counsel, and this goes to what I think you were asking earlier, Jazir was asked whether he saw Keith, quote unquote, turn and point his gun at the police officer and he responded no. I believe that answers the question that you were earlier asking, but again, as it relates to this physical facts rule, which goes both ways, it is clear from Officer Griffiths that he doesn't think that maybe Arthur Keith has a gun. He knows, he says, Arthur Keith has a gun and he's pointing it at him, which means that when Arthur Keith is running, he should still have that  These eyewitnesses say they saw him running. He did not have a gun in his hand. So I would submit that based on the physical facts rule, you don't have one second a gun pointed at an officer who doesn't say it's dropped, no evidence it's found on the ground, that gun then has to be in this person's hand when they are running. So we could argue back and forth, Ms. Bernard and I, about these young men and what they saw. Ultimately, as trials are often decided, it goes to the weight of their testimony, it goes to credibility. There's no video of the shooting. Neither of the other two officers saw the shooting. I would submit that even if you didn't have the eyewitness testimony, the medical examiner and the autopsy findings indicate that Arthur Keith was shot in the back. Now they have a version for how that could happen and he's pointing a gun. The jury's entitled to hear that, but summary judgment requires this court de novo and the trial court to credit and give all the benefit of the doubt and the benefit of the inferences to the plaintiff. And that's not what was done here. And so this is a case that no matter how it's decided, trial lawyers like me, civil rights lawyers like me, we're going to look at this court's de novo review in the same way that lawyers look at the district court's opinion. And ultimately, I guess my appeal to this court is that for plaintiffs and Judge Cole, I think this goes to, that Burnett decision is a good decision. Because one of the things I think it does, it cautions courts from use particular care when you're dealing with summary judgment, especially in cases when the victim can't speak. He's dead. And so my appeal to this court is that we have heightened standards for these 1983 cases. The burden is high enough for the plaintiffs. But we should get, in the same way as other litigants, when it comes to summary judgment, the evidence is viewed in the light most favorable to the plaintiff. The district court is not the fact finder. The court sitting de novo is not the fact finder. The court may very well believe at trial, I know which way this is going to go, but the jury's role here was usurped. And these young men, they live in the complex where this happened. We had a hard time getting them to even appear. They were at home. They weren't out someplace. So I think it's incredulous to say that these young men would somehow make up an account that was first reported right after the incident. And then they're deposed two years later. And they get some of the details wrong. But I am absolutely sure that what they are clear about is they never saw Arthur Keith pointing a gun at Officer Griffiths. They never saw him running with a gun after he was shot. And they never saw a gun on the ground. Now, is it possible, the possibilities and the inferences, that's for the jury. But you can see that his DNA was on the gun? Yes. Yes. And frankly, Arthur Keith in all likelihood would have been arrested and charged. What's interesting is that there was no DNA reportedly on the gun from Officer Griffiths, who says he picked it up without his gloves. Thank you, Your Honor.